UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRAX, LLC, and<br>TRAX INTERNATIONAL CORP., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 10-CV-6901 |
| | ) | |
| CONTINENTAL CASUALTY | ) | Judge John W. Darrah |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs TRAX, LLC and TRAX INTERNATIONAL CORP. ("TRAX") have

filed suit against Defendant Continental Casualty Company ("Continental"), seeking a

judgment that Defendant had a duty under an insurance policy it issued to settle an

underlying lawsuit, *nHance Technologies, Inc. v. TRAX, LLC, et al.*, No. 6:09-cv-00018,

United States District Court, Western District of Virginia ("*nHance* Action"). Plaintiffs

also seek damages for Continental's alleged failure to settle the *nHance* Action.

Plaintiffs have now filed a Motion for Summary Judgment, seeking (1) a judgment of law

that Continental breached its duty to settle the *nHance* Action and (2) a judgment

ordering Continental to reimburse the Plaintiffs the $1.95 million sum the Plaintiffs paid

to settle the *nHance* Action, plus prejudgment interest. Continental has filed a Partial

Motion for Summary Judgment, seeking to confirm that Virginia law applies to the

substantive issues presented in this action. Based on the analysis detailed below,

Continental's Partial Motion for Summary Judgment is granted, and Plaintiffs' Motion for Summary Judgment is denied.

## BACKGROUND

Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to dispute the facts set forth in its opponent's statement in the manner dictated by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b)(3)(C) permits additional material facts to be provided by the nonmoving party. Local Rule 56.1(a)(3) then allows the moving party to submit a concise reply to these additional facts. To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this will not constitute a proper denial of the fact, and the fact will be admitted. *See Graziana v. Village of Oak Park*, 401 F. Supp. 2d 918, 937 (N.D. Ill. 2005).

The following is taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1. Plaintiff TRAX, LLC is a limited liability company organized under the laws of the State of Virginia.[1] Def. 56.1(a)(3) ¶ 1. TRAX, LLC develops, installs, monitors, upgrades, maintains, and services software simulation systems for power plants throughout the United States. Pl. 56.1(b)(3) ¶ 8. TRAX, LLC's computer software development and related work occurs at its Virginia workplace. Pl. 56.1(b)(3) ¶ 9. The General Manager of TRAX, LLC maintains an office in Virginia. Def. 56.1(b)(3) ¶ 2. TRAX, INC. is a corporation organized under the laws of New Mexico, with its principal executive offices in Nevada. Def. 56.1(a)(3) ¶ 2. TRAX is TRAX, LLC's sole and managing member. Pl. 56.1(b)(3) ¶ 2. TRAX is in the principal business of performing testing services for the U.S. military and NASA under government contracts and performs its work nationwide and internationally. Id. ¶ 5. TRAX employs 1,800 employees, though only 12 or 13 are located in Nevada; the bulk of the employees are in Arizona. Def. 56.1(b)(3) ¶¶ 9-10. Continental is an insurance company organized and existing under the laws of Illinois, with its principal office in this District in Illinois. Def. 56.1(a)(3) ¶ 3. Continental's insurance business is regulated by the State of Illinois. Pl. 56.1(b)(3) ¶ 11. More than $75,000 is in controversy in this lawsuit, as Plaintiffs seek to recover from Continental the $1.95 million sum that was paid to settle an underlying lawsuit that gives rise to this action. Def. 56.1(a)(3) ¶ 4.

Continental issued to TRAX, LLC a Global Technology Errors and Omissions Insurance Policy ("the Policy"), effective from March 1, 2009 to March 1, 2010, Policy

---

[1] The location of TRAX, LLC's headquarters and principal executive office is a matter of great dispute, as discussed in the analysis below.

No. 287349211.[2] *Id.* ¶ 5. To obtain this Policy, TRAX, LLC submitted a written, signed application to Continental, where it indicated its "Principal Address" was 5061 Fort Avenue, Lynchburg, Virginia. *Id.* ¶¶ 6-7. TRAX, LLC initiated the Policy's purchase through its communications with an insurance broker in New Mexico. Pl. 56.1(b)(3) ¶ 13. TRAX, LLC received a Quotation for Insurance, which included samples of the policy form and endorsements that would be part of the policy if issued, including a "Virginia Amendatory Endorsement." Def. 56.1(a)(3) ¶¶ 8-9. On February 27, 2009, Continental issued a Binder to TRAX, LLC for the policy. *Id.* ¶ 11. The Policy was issued on an "admitted" basis, meaning that the policy form and wording was approved by the Virginia Bureau of Insurance for issuance to Virginia insureds. *Id.* ¶ 12. At least some of the underwriting for the Policy took place in Continental's branch office in Woodland Hills, California, and the Policy was issued from this office. *Id.* ¶¶ 13, 15. None of the underwriting leading to the issuance of the Policy or related claims-handling was performed in Illinois. Def. 56.1(b)(3) ¶¶ 6, 8.

The Policy excludes coverage for any claim "based upon or arising out of actual or alleged misappropriation of trade secrets." Def. 56.1(a)(3) ¶ 16. The Policy has a general and claim limit of $5,000,000 with a $25,000 deductible. Pl. 56.1(a)(3) ¶ 9. The Policy requires Continental to defend and indemnify TRAX, LLC from suits seeking "damages" for any "wrongful act" committed solely in the conduct of "technology services." *Id.* ¶ 11.

---

[2] Parties disagree as to whether TRAX was also an insured party under the policy.

On March 10, 2009, nHance Technologies, Inc. filed a complaint against TRAX, LLC and TRAX, INC. in the U.S. District Court for the Western District of Virginia, Case Number 6:09-cv-00018. Def. 56.1(a)(3) ¶ 17. This complaint was amended to include defendants TRAX Corporation f/k/a A. Cortez, Inc., TRAX Corporation and Ronald R. Dixon on April 22, 2010. *Id.* ¶ 18. Ronald Dixon and TRAX Corporation are not insured under the Policy. Def. 56.1(b)(3) ¶ 18. The amended complaint alleged claims of copyright infringement and misappropriation of trade secrets and sought damages from the defendants. Pl. 56.1(a)(3) ¶ 15. On or about November 6, 2009, TRAX, LLC requested coverage and a defense from Continental, and the *nHance* Action was assigned to Gabriela Wainschtok of Continental to handle as a claim under the policy. Def. 56.1(a)(3) ¶¶ 20-21. Continental acknowledged in letters to Plaintiffs that one or more claims pled in the *nHance* Action qualified as a "claim" under its Policy, thus triggering Continental's duty to defend. Pl. 56.1(a)(3) ¶ 18. Continental, believing there was a potential for coverage for the copyright infringement claim, provided a defense to TRAX, LLC from Continental's claim department in New York. Def. 56.1(a)(3) ¶¶ 22-23, Pl. 56.1(a)(3) ¶ 20.

in a letter on August 4, 2010, nHance's counsel set forth the factual and legal reasons why TRAX and the other defendants were likely to be found liable in the *nHance* Action and why the damages exposure faced by the defendants was in excess of $8 million. Pl. 56.1(a)(3) ¶ 28. nHance's counsel also stated in the August 4, 2010 letter that "TRAX, LLC was unjustly enriched in the amount of $4,058,885 in net profits" and was also "liable for $7,119,319 in future royalties should injunctive relief be unavailable"

and that "TRAX, LLC was unjustly enriched in the amount of $8,598,756; and Dixon was unjustly enriched in the amount of $2,000,000, plus his 50% interest in TRX." Def. 56.1(b)(3) ¶ 15. TRAX provided this letter to Gabriela Wainschtok at Continental. Pl. 56.1(a)(3) ¶ 30. nHance's counsel further stated nHance was willing to settle its claims for $8 million from TRAX, INC. and TRAX, LLC; $4,151,400 from Ronald Dixon; and $5 million from TRX CORP. Def. 56.1(b)(3) ¶ 16. Continental sent TRAX a letter on August 17, 2010, asserting that the damages nHance sought through its copyright-infringement claim was the "return of profits" which it contended was "restitution in character" and therefore Continental did not see these monies fitting within the policy's definition of "damages." Pl. 56.1(a)(3) ¶ 33. TRAX, LLC and TRAX responded in an August 18, 2010 letter, objecting to Continental's characterizations and proposed allocations of damages. *Id.* ¶ 34. The *nHance* Action was settled at a settlement conference in Virginia on August 24, 2010, and TRAX, LLC and TRAX were required to pay nHance the sum of $1,950,000. Def. 56.1(a)(3) ¶¶ 24-25. This payment was in exchange for release of all defendants, and as part of the settlement of the *nHance* Action, nHance granted TRAX LLC and TRAX INC. a "royalty-free, perpetual license" relating to a specific source code that was at issue in the *nHance* Action. Def. 56.1(b)(3) ¶ 21. All parties to the *nHance* Action were present at the settlement conference, including Continental's representative, Gabriela Wainschtok. Pl. 56.1(a)(3) ¶ 23. Wainschtok had up to $500,000 of settlement authority and could have telephoned Continental to obtain more authority. *Id.* ¶ 44. Both TRAX and Continental believed it was beneficial to settle the *nHance* Action rather than try the case. *Id.* ¶ 26. At the

settlement conference, Continental encouraged settlement and offered to contribute no more than $350,000 towards the settlement. *Id.* ¶ 40. Continental agreed it was reasonable and prudent for TRAX, LLC and TRAX to settle the *nHance* Action for up to $2 million. *Id.* ¶ 43.

nHance was located in Lynchburg, Virginia, and the settlement was wired to nHance's counsel, Woods Rogers PLC, which was also located in Virginia. Def. 56.1(a)(3) ¶¶ 26-28.

## LEGAL STANDARD

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) because at the initial time of filing, minimal diversity existed between Plaintiffs and Defendant and the amount in controversy exceeded $75,000.

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a

motion for summary judgment, nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

### *Continental's Motion for Partial Summary Judgment*

Continental has moved for an entry of partial summary judgment to confirm that Virginia law applies to the substantive issues in this action. In light of the following analysis, Continental's Motion is granted. There is a conflict of law between the states of Illinois and Virginia governing the claims at issue in this suit. As this case has been filed in the State of Illinois, Illinois' choice-of-law rules must be applied. Under Illinois law, an analysis is required to determine the state with the "most significant contacts." *Costello v. Liberty Mutual Fire Insurance Co.*, 876 N.E.2d 115, 120 (Ill. App. Ct. 2007) (*Costello*).

## A Conflict of Law Exists

To apply the law of a state other than the forum state, it must first be determined that a conflict exists between the substantive law of the states whose law the parties seek to have applied. Under Illinois choice-of-law principles, Illinois substantive law must be applied unless a conflict of law exists that would change the outcome of the litigation. *International Adminstrators, Inc. v. Life Ins. Co. of N. America*, 753 F.2d 1373, 1376 (7th Cir. 1985). "There is a conflict if the difference in laws [of the forum state and another state] will result in a difference in outcome." *McGrew v. Pearlman*, 710 N.E.2d 125, 128 (Ill.App.Ct. 1999).

In this case, a conflict exists between Illinois law and Virginia law regarding the treatment of settlement payments under insurance policies. Under Illinois law, if the "primary focus" of a settlement was a claim covered by the insurance policy, then the insurer may be responsible to pay the entire settlement, including claims not specifically covered under the policy. *Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.*, 611 F.3d 339, 350 (7th Cir. 2010) (*Santa's Best*). The Virginia law governing this issue is less clear. Continental relies heavily on *RML Corp. v. Assurance Co. of America*, 60 Va. Cir. 269 (Va. Cir. Ct. 2002) (*RML*).[3] In the *RML* case, the Virginia state court stated the plaintiff in a breach of insurance contract suit had the burden to show how much of a settlement was for claims covered by the underlying insurance policy. *RML*, 60 Va. Cir. at 269. Then, the defendant must prove its affirmative defenses, showing why exclusions in the policy were applicable. *Id.* Under this rule, an allocation of the settlement would

---

[3] After discussing the issue of allocation, the opinion went on to deny a motion to compel discovery.

be required, assigning a value to each claim settled. A defendant would not necessarily be required to pay the settlement in its entirety, rather, only the allocated portion of the claims covered by the insurance policy. *Id.* The application of the Illinois law would likely result in Continental's paying for the entire settlement, provided the "primary focus" of the settlement was covered by the insurance policy – Plaintiffs allege the primary focus was the copyright-infringement claim, and further allege this is covered by the insurance policy. The application of Virginia law would create a different result; using *RML* as a guide, it appears Virginia law would require an allocation of the claims in the settlement, apportioning amounts to each claim.

Plaintiffs take issue with the application of *RML* to establish Virginia's law governing the payment of settled claims under an insurance policy. In particular, Plaintiffs argue that the *RML* decision cannot be considered as it lacks precedential value because the opinion was issued by a Virginia trial court. Plaintiffs cite to an Illinois appellate case, which stated that "[a]n unpublished order of a trial court is without precedential value." *Norton v. City of Chicago*, 690 N.E.2d 119, 124 (Ill. App. 1997). However, the court in *Norton* is speaking specifically of the requirement to give an Illinois appellate court decision greater weight than an unpublished Illinois trial court decision. The *Norton* case does not address cases from trial courts of other states. The opinion of the Virginia trial court in *RML* is indicative of the determination of the coverage of settled claims in insurance policies in Virginia. Even if this was not an opinion issued by the highest court in the state of Virginia, the case is useful in this analysis. When the highest court of a state has not ruled on an issue of state law, a

federal court must predict how that court would rule. *See Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465 (1967). Clearly, the trial court's opinion in *RML* must be considered to predict how the Virginia Supreme Court would rule on the settlement coverage issue.

Thus, the law of Illinois and the law of Virginia disagree on this issue. Illinois law dictates that Defendant pay for the entire settlement, treating the copyright-infringement claim as the "primary focus" of the settlement under the *Santa's Best* test. Contrarily, Virginia law would likely require an allocation of the settlement; Plaintiffs would need to allocate the value of claims covered and the value of uncovered claims. The application of Virginia law would create a different outcome than the application of Illinois law; therefore, a conflict of law exists.

### Choice of Law: "Most Significant Contacts"

When a conflict of law exists, and the policy has no choice-of-law provision, the court must determine which state's law is applicable. The Policy at issue in this matter did not have a choice-of-law provision. "When a district court sits in diversity, it must apply the choice of law principles of the forum state to determine which state's substantive law governs the proceeding." *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). Thus, Illinois' choice-of-law principles would govern the present case. *Id.* In Illinois, the choice-of-law question in insurance coverage disputes is determined by applying the "most significant contacts" test. *Costello*, 876 N.E.2d at 120. Under this test, the court must identify the states that have meaningful contacts with the underlying dispute and evaluate which state has the most significant contacts with this

dispute. *Id.* Obviously, the court must consider in this case whether Virginia or Illinois

has more significant contacts to this insurance dispute. Plaintiffs further argue the State

of Nevada also has significant contacts to this dispute and that Nevada law might

properly apply.

In order to determine the state with the most significant contacts in insurance

policy disputes, the court must consider: "the location of the subject matter, the place of

delivery of the contract, the domicile of the insured or of the insurer, the place of the last

act to give rise to the contract, the place of performance, or other place bearing a rational

relationship to the general contract." *Costello*, 876 N.E.2d at 120 (quoting *Westchester*

*Fire Insurance Co. v. G. Heileman Brewing Co.*, 747 N.E.2d 955, 961 (Ill. App. Ct.

2001) (*Westchester Fire*)).

### Location of Subject Matter

The location of the subject matter in insurance coverage disputes is considered the

location of the risk insured. *Liberty Mut. Fire Ins. Co. v. Woodfield Mall, L.L.C.*, 941

N.E.2d 209, 217 (Ill. App. Ct. 2010) (*Woodfield Mall*). This factor in the analysis is

often considered paramount. However, "[t]hough the location of the insured risk is often

seen as the most important factor in this sort of analysis, that is not the case where, as

here, the risk locations are scattered through several states." *Woodfield Mall*, 941 N.E.2d

at 217 (quoting *Emerson Electric Co. v. Aetna Casualty & Surety Co.*, 743 N.E.2d 629,

640 (Ill. App. Ct. 2001) (*Emerson*)). Rather, in cases like the one at issue, where a policy

insures risks contemplated at many locations nationwide, the court seeks "the location

which appeared to be most likely contemplated by the parties as the source of law and

would also serve the interests of predictability, uniformity of result, and ease in determining and applying the law." *Id.* The location of the risk covered in Continental's policy would include risks nationwide where Plaintiffs' technology team served customers. The location of the underlying lawsuit is not dispositive of the location of the subject matter. *Westchester Fire*, 747 N.E.2d at 962. "The location of the underlying action can, however, be considered as an additional relevant factor." *Id.* In the case at present, the factor of the location of the subject matter is given little weight, as the insurance policy covered risks nationwide. However, the balance would tip in favor of Virginia on this factor, as some consideration of the location of the underlying action in Virginia is deemed relevant. The factor is certainly not "Nevada-centric," as Plaintiffs argue, while inexplicably failing to mention the State of Nevada in their analysis of this factor.

### The Place of Delivery of the Policy

The next factor to consider is the place the policy was delivered. Continental asserts the Policy was delivered to TRAX, LLC by sending the Policy to the broker in New Mexico. (Filaccio Dec. ¶ 4). The broker is considered an agent of the insured. *See State Security Insurance Co. v. Burgos,* 583 N.E.2d 547 (Ill. App. Ct. 1991). Thus, delivery to the broker in New Mexico would constitute delivery to the insured Plaintiffs, as the broker acted as an agent of Plaintiffs. The place of delivery of the Policy was in New Mexico. Plaintiffs argue, though, that the place of delivery was in Nevada. Plaintiffs' Chief Financial Officer received the Policy in Nevada from the insurance broker. However, the Policy was already "delivered" to Plaintiffs upon the broker's

receipt of the Policy in New Mexico. New Mexico has no legitimate interest in this coverage dispute, and neither party seeks to apply the law of New Mexico to govern this suit. As such, the place of the delivery of the Policy is not considered a relevant factor in this analysis.

### Domicile of the Insured or the Insurer

It is undisputed that the domicile of the insurer, Continental, is in the State of Illinois. Def. 56.1(a)(3) ¶ 3. TRAX is the manager of the named insured party, TRAX, LLC. The domicile of a corporation is its state of incorporation, regardless of whether it may do business in another state. *See LeBlanc v. G.D. Searle & Co.*, 533 N.E.2d 41, 42 (Ill. App. Ct. 1988) (quoting *Thornton v. Nome and Sinook Co.*, 260 Ill.App. 76, 82 (1931): "[t]he mere fact that a corporation has its principal office in a particular state, does not make it a resident of that state"). Thus, TRAX's domicile is in New Mexico, where TRAX is incorporated. Def. 56.1(a)(3) ¶ 2. However, the parties disagree on the domicile of TRAX, LLC.

Continental argues TRAX, LLC's domicile is in Virginia. Plaintiffs argue the domicile of TRAX, LLC is in either New Mexico or Nevada, but not Virginia. TRAX, LLC is a limited liability company organized under the laws of the State of Virginia. Def. 56.1(a)(3) ¶ 1. Plaintiffs argue TRAX, LLC is not domiciled in Virginia because its principal executive office is located in Nevada. The assertion is confusing, as Plaintiffs have contradicted this statement at many different points in the litigation. Plaintiffs' Complaint stated TRAX, LLC's principal executive office was in Virginia. Then, in support of their initial Motion for Summary Judgment, Plaintiffs submitted a declaration

from Pamela Hormell, the Chief Financial Officer of TRAX, stating the principal executive office of TRAX, LLC was in Virginia. Pl. 56.1(a)(3) Ex. A, ¶ 3, Dkt. Entry 32-1. However, after filing their Motion for Summary Judgment on January 27, 2011, Plaintiffs withdrew this Motion without prejudice on March 17, 2011. Plaintiffs then filed a First Amended Complaint on June 27, 2011, where they *again* state TRAX, LLC has its principal office in Virginia. Plaintiffs, perhaps finally realizing the potentially negative impact of Virginia law to their case, next submitted another affidavit from CFO Hormell, stating her original statement of the principal office's being in Virginia was "inaccurate." Hormell clarifies in her second declaration that it is more accurate to state that TRAX, LLC's principal executive office is in Nevada. Hormell Opp. Dec. ¶ 13.

Judicial admissions are formal concessions in the pleadings, and the party who is making the admissions is bound to them. *Guise v. BWM Mortg., LLC*, 377 F.3d 795, 801 (7th Cir. 2004). A judicial admission cannot simply be contradicted by filing another affidavit to controvert the initial admission. "Affidavits and depositions entered in opposition to summary judgment that attempt to establish issues of fact cannot refute default admissions." *U.S. v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987). Plaintiffs argue that the statement of TRAX, LLC's principal executive office being located in Virginia is a legal conclusion, rather than a judicial admission. Plaintiffs claim they pled the Virginia office location merely to establish the citizenship diversity required to be in federal district court. This argument is unconvincing. First, the basic fact of TRAX, LLC's principal office location is not a legal conclusion. It is a statement of fact provided by Plaintiffs again and again during the course of the litigation. While this

factual admission might provide the foundation for a legal conclusion, the admission's role on the ultimate legal decision does not render it a conclusion of law. *Roberts v. Sears, Roebuck & Co.,* No. 80 C 5986, 1988 WL 128696, (N.D.Ill. Nov. 21, 1988). Moreover, Plaintiffs' claim that the statement is a legal conclusion to establish diversity jurisdiction is unpersuasive because if that was the sole basis of the statement, Plaintiffs could have alleged from the beginning that the principal executive office of TRAX, LLC was in Nevada. This, too, would have established diversity jurisdiction. Instead, Plaintiffs waited until after Continental filed its Motion for Partial Summary Judgment to allege that TRAX, LLC's principal executive office was in Nevada, rather than Virginia, to attempt to establish domicile in Nevada, rather than Virginia. Based on the binding factual admissions made by Plaintiffs, the domicile of TRAX, LLC is deemed to be Virginia for purposes of this analysis.

Having established the domiciles of the three parties involved (Continental is domiciled in Illinois; TRAX in New Mexico; and TRAX, LLC in Virginia), the Court must determine whether Continental's domicile or Plaintiffs' domiciles should be given more weight. While Continental is located in Illinois, it does not appear that anything else relating to this litigation occurred in Illinois. None of the underwriting, approval, issuance, or claims handling occurred in Illinois. Def. 56.1(b)(3)(C) ¶¶ 7-8. Though the State of Illinois, Continental's domicile, has an interest in regulating its insurance industry and thus has an interest in this case, the domicile of TRAX, LLC more closely relates to this litigation. TRAX, LLC performs its technology operations, which are the operations insured under the Continental policy, in Virginia. Hormell Opp. Dec. ¶ 7.

TRAX, LLC also listed its principal address on the insurance policy application as its address in Virginia. TRAX, LLC announced its operational office's grand opening in Virginia in various press releases. *See* Margulis Dec. Ex. B, C, D. The general manager of TRAX, LLC maintains his office in Virginia. Margulis Opp. Dec. Ex. B, 8:18-10-10. Under the domicile factor of this analysis, Virginia has more contacts than other states, and more weight is given to Virginia here.

### The Place of the Last Act to Give Rise to the Contract

The Policy was issued from one of Continental's offices in California and was sent to Plaintiffs' broker in New Mexico. This delivery to the broker in New Mexico may have been the last act to give rise to the contract at issue, but none of the parties argue New Mexico or California have legitimate interests in this litigation based on this minimal contact. This is not a significant factor to consider and does not resolve the choice-of-law issue; this factor is afforded no weight.

### The Place of Performance of the Contract

In considering the place the Policy was performed, Illinois law treats the place where the claim is to be paid to be as a "major factor." *Emerson*, 743 N.E.2d at 641. "Where there is no express agreement as to the place of performance, it may be determined according to the intent of the parties, namely, the intended place of the insurer's payment of claims under the policy." *Id.* Furthermore, when the parties' intent is in doubt, the court looks to where the insured is located. *Id.* The Plaintiffs' claim relating to the *nHance* Action would have been paid in Virginia. Continental was performing under the Policy in Virginia when it provided its defense in the *nHance*

Action; the settlement conference took place in Virginia, and the payment made to settle nHance's claims was paid in Virginia. Def. 56.1(a)(3) ¶¶ 25-28. Plaintiffs argue Virginia is not the place of performance because the place of performance is "not where the insurer may have to defend its insured, because there could be multiple jurisdictions." *Nvidia Corp. v. Fed. Ins. Co.,* No. 04 C 7178 2005 WL 2230190 at *5 (N.D. Ill. Sept 5, 2005) (*Nvidia*). However, in the present case, the place where the insurer *actually did* defend the insured is clearly identified. That place is Virginia. Even if Plaintiffs intended the place of the insurer's payment of claims to be elsewhere, to the extent that the parties' intentions are in doubt, the court looks to where the insured is located. *Emerson,* 743 N.E.2d at 641. Based on the domicile discussion above, the insured is located in Virginia; thus, this factor weighs in favor of Virginia.

### Other Place Bearing a Rational Relationship to the General Contract

The final factor in making the choice-of-law determination under Illinois law is the consideration of any "other place bearing a rational relationship to the general contract." *Costello,* 876 N.E.2d at 120. This factor can include the state where the underlying suit was filed. *Nvidia,* 2230190 at *5. While this factor is not dispositive, it can be treated as another relevant factor. *Id.* It is yet another factor, though small, to weigh in favor of Virginia as the choice of law under the *Westchester Fire* analysis.

In considering all of the factors in the *Westchester Fire* analysis, it is apparent that the state with the most significant contacts to this dispute is Virginia. Therefore, Continental's Motion for Partial Summary Judgment to confirm that Virginia law applies

to the substantive issues presented in this action is granted. Virginia law shall govern the substantive matters at issue in this dispute.

*Plaintiffs' Motion for Summary Judgment*

Plaintiffs seek summary judgment in their favor, claiming as a matter of law:
(1) Continental breached its duty under its Policy to settle the *nHance* Action and
(2) Continental must reimburse Plaintiffs the $1.95 million sum paid by Plaintiffs to settle the *nHance* Action, plus prejudgment interest.

<u>Virginia Law Requires an Allocation of the Settlement</u>

As discussed above, the law of Virginia indicates that in resolving a coverage dispute over the settlement of a case, the plaintiff bears the burden to show how much of the settlement was for claims covered by the underlying insurance policy. *RML*, 60 Va. Cir. at 269. Then, the defendant must prove its affirmative defenses, showing why exclusions in the policy were applicable. *Id.* Under this framework, it is apparent that an allocation of the settlement between covered and uncovered claims is necessary. *RML* relies on a Fourth Circuit case, at least in part, to support its view of allocation. *See Atlantic Permanent Federal Sav. & Loan Assoc. v. American Casualty Co.*, 839 F.2d 212 (4th Cir. 1988) (stating that the insured had the burden to allocate the settlement amount between covered and non-covered persons). Under *RML*, an allocation of the settlement is appropriate, assigning a value to each claim settled. A defendant would not necessarily be required to pay the settlement in its entirety, rather, only the allocated portion of the claims covered by the insurance policy. *Id.* This differs from the approach under Illinois law, which potentially would require the defendant to pay for the entire settlement,

19

provided the primary focus of the underlying suit was covered by the insurance policy. *See Santa's Best*, 611 F.3d at 350. As detailed above, however, Virginia law governs this dispute. Thus, an allocation of the claims is necessary.

Allocation Cannot Be Decided as a Matter of Law

An allocation of the covered and uncovered claims may not be decided as a matter of law. Necessarily, allocating the settlement between the covered and potentially uncovered claims is a factual determination.

The settlement agreement involved the settlement of nHance's claims of copyright infringement and misappropriation of trade secrets under Virginia's Trade Secrets Act. Pl. 56.1(a)(3) ¶ 15. Additionally, the payment of $1,950,000 for the settlement of the *nHance* action was in exchange for releases of all defendants, and as part of the settlement of the *nHance* Action, nHance granted TRAX, LLC and TRAX INC. a "royalty-free, perpetual license" of the copyrighted source code at issue in the *nHance* Action. Def. 56.1(b)(3)(C) ¶ 21. To the extent that the $1.95 million settlement covers the settlement of the trade-secret claim, this portion of the settlement must be allocated, as a claim of trade secret misappropriation was not covered by the insurance policy. Def. 56.1(a)(3) ¶ 16. Plaintiffs argue that no allocation for the trade-secret claim is proper because it was not the "primary focus" of the case. While this standard is useful under Illinois law, it would not be instructive under applicable Virginia law. Despite Plaintiffs' assertion that the trade-secret claim was "extremely weak," to the extent that the $1.95 million settlement releases this trade-secret claim, that amount should be

allocated. The portion of this settlement relating to the trade-secret claim is a factual determination and cannot be decided as a matter of law.

Similarly, an allocation analysis may be necessary for the issuance of the license under the settlement agreement. While Plaintiffs assert that the settlement agreement states no consideration was paid for the license, Continental alleges this provision was included simply to protect Plaintiffs by attributing the damages to the claim covered by the insurance policy, as a license would not be covered under the Policy. This, too, would be a factual determination, and any possible allocation of the license cannot be determined as a matter of law.

Finally, to the extent that the settlement to nHance was intended to release claims against any uninsured parties, these claims, too, would require allocation. Plaintiffs state TRAX did not settle on behalf of the other, uninsured defendants, but argue instead that nHance simply gave up trying to get money from these parties. The value, if any, of the allocation of claims against uninsured parties is a factual determination and cannot be decided as a matter of law.

It is clear questions of fact exist concerning the amount of the settlement payment to be allocated to the claims covered under the insurance policies and those claims outside the Policy coverage. Thus, Plaintiffs' Motion for Summary Judgment is denied as genuine issues of material fact remain.

## CONCLUSION

In light of the foregoing analysis, Continental's partial Motion for Summary

Judgment is granted, and Plaintiffs' Motion for Summary Judgment is denied.

Date: 12-14-11

JOHN W. DARRAH
United States District Court Judge